Ron, this is the second case of the morning. Call 210-168, Brook Brook v. Illinois Labor Relations Board. I'll call. On behalf of the Apollon, Mr. Mark Sturt. On behalf of the Apollon, Illinois Labor Relations Board, Mr. Sunil Bhatia. Good morning, Mr. Sturt. Good morning. Good morning. May it please the court, my name is Mark Sturt, S-T-E-R-K, appearing before you this morning on behalf of the village of Oak Brook. Your honors, this case is controlled by Section 3R of the Labor Relations Act, and whether the sergeants of the Oak Brook Police Department are supervisors. And for that, Section 3R plays out a two-part test. One is whether the employee performs work which is substantially different from the work performed by his or her subordinates. And that was acknowledged by the Labor Board in the recommended final decision of the Administrative Law Judge. The second part of the test is whether the sergeant performs any one of the 11 functions on behalf of the employer and in the interest of the employer. And those are to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, discipline, or adjust grievances, or to effectively recommend that any of those functions be performed. And then that's done fairly often, independently, and not merely as a matter of routine or clerical performance. We've submitted to this court that the sergeants of the Oak Brook Police Department have the authority to suspend, to direct, to reward, to discipline, or to adjust grievances. What about the argument that the reality is that while the general orders and the job description might say that, the reality is that the chief really runs the show and he makes all the decisions. And if the sergeant sits really ineffective in terms of recommending discipline, ineffective in terms of evaluations, their numbers can change because of a directive of a lieutenant, and it's really just a wink and a nod. Sure, and I can direct, I can respond to two of those points right now. And the first is with respect to the discipline. And during the course of the hearing, the sergeants, there were three sergeants that testified by my recollection on behalf of the union, and that was Sergeant Bursall, Sergeant King, and Sergeant Jacobs. Sergeant King offered no testimony at all about any discipline that he had imposed. Sergeant Jacobs testified that his recollection that he'd imposed discipline on ten, approximately ten occasions, and given a specific recollection. And then I asked him that in any of those instances, has your decision been overridden by the lieutenant because he reports directly to Lieutenant Cates. And his answer was, no, I don't know of any that were. So while they talk about the fact that, and this largely anecdotal testimony submitted to the court, there was no specific instance that Jacobs could testify to where he had imposed discipline and the discipline had been overridden by a superior officer. And you've got to remember that it's not in fact it was this court that discussed this with Woodridge, and not in Woodridge but in the Sandwich case that just came out last month, about the fact that sometimes the chief of police in that instance, sometimes he goes along with the discipline, sometimes he's going to increase the discipline, and sometimes he's going to decrease the discipline. With respect to Sergeant Bursall, Bursall testified that he always went to the supervisor to talk to the supervisor about the discipline that he put in. And I asked him the, quote, question, so really when you went to Cates, being Lieutenant Cates, you got to talk to him about this stuff, meaning the discipline, you were seeking his guidance. And Bursall answered yes. Now, Cates, did he say to you, you'd better come and see me about these otherwise heads will roll? Did he say that? No, he did not. So it's just simply not true. There's only one instance. I'm sorry, go ahead. No, go ahead. Okay, there was only one instance in the entire record where they talked about discipline being imposed, and that was with respect to Sergeant Marty Zalesko, who's now a sergeant, whose name is not mentioned in the record, but I refer to it as the Zalesko incident, and that was where the officer, the sergeant recommends some discipline, and he received a different set of discipline. So, you know, it's a paramilitary organization. They're going to look up at, you know, if the supervisors above the sergeants are going to supervise them, then what's the point in having them there? Isn't the city of Sandwich case distinguishable, though, because in Sandwich there was no rank between the sergeants and the chief, correct? Right. Does that change anything? No, I don't see that that's a difference at all. There's no testimony in this record that the chief ever went down and told these guys to do anything. In fact, in the discussion of the record, there is a, when they talk about the sergeants' meetings, the chief rarely ran the sergeants' meetings. Largely that was rarely attended the sergeants' meetings. It was largely a meeting between the lieutenants and the sergeants, and occasionally the deputy chief, but principally it was with one lieutenant. There's three lieutenants in the department, one's in charge of the detective division, one's in charge of the support division, and the other one's in charge of the patrol division. And they ask Lieutenant Cates, and Lieutenant Cates deals with the six sergeants. There's two sergeants on each of the three shifts. What's our standard of review? Clearly erroneous. That's my understanding of the decision. But as the Supreme Court said, and as I think this court noted in Woodbridge cases, that you're not supposed to rubber stamp this. And I think that if you look at the four cases that have dealt with this, the Freeport case, the Woodbridge case, the Sandwich case, both of which came from this district, the Hazelcrest case, if these sergeants aren't supervisors, then I don't know what it is. If they're in their respect. And, Justice Burkett, you'll have to excuse me, but at my age I forgot the second part of the question. I forgot the second point that you raised. No, that's okay. I was asking about the city of Sandwich. Because I knew the answer to it, I just don't remember. The city of Sandwich case, and that's all right. Okay. When most of these problems arise on the definition of independent judgment, the hearing officer takes a position on what the definition of independent judgment is, and the courts obviously have taken a different position in most cases. But the hearing officer took the position that, based on the evidence, there was no indication that the sergeants had the power to direct, because they did not use independent judgment in evaluating subordinates. They lacked authority to discipline and did not direct, discipline, report or promise or adjust the problems that arose with their people below them. Judge, they do have the authority to impose discipline, and specifically they have the authority to impose discipline under Department of General Order 96-0020, which is part of the record, and I believe it's Exhibit 11. I don't want to say which exhibit it is. It's 10 or 11. They have the authority to issue documented counseling sessions. They have the authority to issue documented verbal written reprimands, both of which go in the file. In fact, the order specifically says that sergeants and as court supervisors have the authority to issue documented counseling sessions and documented verbal reprimands. They go in the file. Our Supreme Court said in the Freeport case, and it's been acknowledged three times by the appellate courts in the three cases that I've discussed, that if you've got the authority to issue discipline, if you've got the authority to do this, and if it goes in the file, that's discipline. And if you have the authority to issue discipline, you're a supervisor. And it's not how often you do it. It's the fact that you have the authority to do it. Some departments, I represent a lot of police departments, and I'm sure that you've been around to know that some police departments are very low-discipline departments, that it's never a problem. Some departments are high-discipline departments where, you know, either because of the officers or the circumstances in the community, a lot of the officers get disciplined. So it's not the fact that cops are getting disciplined all the time or they're not getting disciplined. It's the fact that they have the authority to be disciplined. And notwithstanding what the attorney general said about this, in their brief, the testimony of the case from Lieutenant Cates is that he never got involved in discipline. When it came to these two functions, that's their job. That's what they're supposed to do. There is no mandate that these sergeants seek guidance from the superior. In fact, Justice, there was the testimony that I took from Sergeant Bertsall in his report that's page 207 going through the transcript. And I asked him, so really when you went to Cates, and we're talking about Bertsall said, oh, you know, I always went to Cates to debate a discipline issue. And I asked him, so really when you went to Cates to talk to him about this stuff in discipline, you were seeking his guidance. Bertsall answered yes. And I asked him again. He didn't say, meaning Cates, you better come and see me, otherwise hats will roll, question mark. He did not say that. So the fact that a sergeant goes to his superior and says, hey, you know, I'm thinking about giving this guy a verbal reprimand, a written reprimand, that just means that the sergeant, he has questions. Now, he's seeking out his supervisor about what he should do. But he never said, Cates said to him, this is what you have to do. And then it's an important point here because I only got to hit one to win the case. And we all know that. And so then I asked Jacobs on his cross-examination, you also testified that you've issued 10 counseling and 10 verbal reprimands. So that's 20. That's 20 that go in the file. Yes. That's a practical recollection. Okay. I said, were there any that were overridden by the lieutenant? No. I don't know of any that weren't. So where are we at? In the whole universe of discipline, and there doesn't have to be a lot of discipline. It's the fact that they have the authority to issue discipline. In the whole universe of discipline, they could point to one instance where the command staff, the lieutenants, or the deputy chief, or whoever it was, decided that the discipline for an officer that had been there 25 years was that the discipline that the sergeant proposed wasn't the appropriate discipline. And if supervisors don't have the authority to review the actions of their subordinates, the lieutenants or the chief or the deputy chief, what's the point in having supervisors? What about the authority to direct? The attorney general's argument is really that they don't have the authority to direct. I mean, it's really in its full form. Everything is already set in stone. They don't really direct anything. Well, I mean, but the record shows that that's exactly the opposite is what's correct. It's that the opening sentence of the job description for the sergeant, which was submitted into evidence, the primary duty of a sergeant is the supervision of assigned personnel to ensure the proper performance of patrol and other police duties. That's the preamble to the whole job description. Essential job functions of the sergeant. Number one, directly supervises police officers, ensuring that required duties are properly performed by subordinates and provides advice and assistance when necessary. Again, if we go on, there's 12 others. Review reports, approved time off requests. There's testimony that wasn't rebutted by Cates. When they come on the ship, sergeant comes on the ship, he decides he needs to have six guys and there's five guys. He has the authority to call somebody back or hold somebody over. He doesn't have to call Cates. If he decides that he can handle the ship with less than what the department says is the staffing requirement, then he does that, and he doesn't have to call Cates. They approve the vacation time, none of which is rebutted by the sergeants. Their testimony, if you go through the record and read their testimony, it's largely anecdotal. It's like the birdsong. It's like the Zalesko incident. Oh, I'm sorry, but one time, 100 years ago, they decided or they picked a different form of discipline, therefore I don't have the authority to discipline anyway. The record is exactly the opposite. They lead and motivate the personnel. They're responsible for the performance activities of the personnel under their function. Some of the highlights. They document incidents of superior or substantive performance. We'll get into the mere evaluation in a minute. They give subordinates constant feedback on their performance. They reward or discipline subordinates based on their performance. The two forms of reprimands. The rewards we'll talk about in a minute in terms of the performance evaluations. They make recommendations for the retention of probationary officers, which was another point that they made in the record that, well, we recommended that somebody stay on probation or that they stay on probation for another couple of weeks, and that that didn't happen. Well, on rebuttal, the patent's case testified that the reason the department did that is because they were shorthanded, and they had to take this guy off of probationary status because of all the vacation time and because of all the people that were off on workers' comp and disability. So they were putting somebody that was totally unqualified for the job. The sergeants thought, well, this guy could use another week or two, right under the field training officer, and the department, because of manning requirements, said, okay, we appreciate that, but we've got to put this guy out. So it wasn't somebody that they were going to put on the department, that the sergeant said, this guy's got to go, and we kept him. It was simply because of that instance. And then I think most importantly out of all these, aside from the preamble in the first one, is that during non-business hours, including holidays and weekends, the on-duty sergeant may assume full responsibility for the police department and its operations. And the testimony, which everybody agreed to, was that at least two-thirds of the time the sergeants are the people that are in charge. Under the statute, that percentage really doesn't apply to police personnel, correct? Pardon me? Under the statute, that police are excluded from weighing how much time a person devotes to particular duties, correct? Yeah, but it's more than that. I don't think it's in that context, Justice Burkett. It's in the context of who's running the show. Are these guys supervisors or are they not supervisors? Two-thirds of the day, because it's a 24-7 operation, two-thirds of the day, they're the guys, you know, they're the top dog there. And it's not just me that's weighing in on this. This Court has also commented on it, but most notably our Illinois Supreme Court in the Freeport case said, quote, most significantly in the late evening and early morning hours, there are no personnel with authority higher than the ranking officer, according to the sergeant, on duty. If the ranking officers are not supervisors, the Freeport Police Department operates entirely without supervision a large part of the time. Your time is up. And if you could follow up on one main point, if you feel that there's something that we could do. I'm sorry. The last thing that I would like to do, do I have a couple minutes for rebuttal, too? Yes. Oh, yeah, probably. The last thing that I want to comment on is that, if I can only pick one of them, is the reward. And in one of your cases, I believe it was the Woodruff case, they talked about the fact that the sergeants do the evaluations, that that doesn't have a, you know, it doesn't affect their salary, but it does affect other things. Here, it directly affects the salaries. The evaluations, and that's discussed, are prepared by the sergeants, they're reviewed by the lieutenant, who's never changed a numerical score. That was on rebuttal. He never told anybody to go back and change the number. But the numerical score directly affects the salaries that all non-top-of-grade officers receive, because from the time you get hired to the time you reach top of grade, you get a merit component. And your merit component is determined solely on the performance evaluation, and it's 0 to 5 percent. Not anymore, because we didn't elect a bargaining agreement, but at the time, now it's 0 to 4. But before, it was 0 to 5 percent. And Kate's testified that in the best-case scenario, the guys who get the best performance evaluations get to top of grade in four years. The guys that get, you know, the run of the mill or less than the best performance evaluations get to the top of the grade in seven years. Now, you know, the point that the State makes here and that Matt makes here is that, well, you know, Kate's looked at the evaluations. Kate's did look at the evaluations. Kate looked at the evaluations to make sure that stuff was spelled right, to make sure that the officers, that the sergeants, in putting in their evaluations, knew about all the commendations and the disciplinary matters, because the cops may have moved from ship to ship, the sergeants may have moved from ship to ship, so they may not know everything. And then there were situations where Kate's would say, hey, you know, in order to support this number, you need to beef up your evaluation. Anybody that's ever evaluated employees in any type of employment situation knows that you have to. In an orchestra, what's the movement of the maestro to bring everything to an end? I'm going to make one up. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Sunil Bawe, and I'm an Illinois Assistant Attorney General. Here on behalf of the State Respondent and the State Panel of the Illinois Public Labor Relations Board, I would also like to mention that in the gallery is the Counsel for Metropolitan Alliance of Police. Although he's not arguing, he is present. Mr. Raymond Garza. Your Honors, what's at issue in this case boils down to whether the village has satisfied its burden of proving with sufficient evidence in reasonably convincing the Board that its police sergeants possess real statutory supervisory authority under Section 3R of the Act. I'm going to start right away with the authority to discipline, because it's true that the sergeants do possess the authority to issue oral reprimands, documented oral reprimands, and documented oral counseling sessions. But the authority to issue those types of alleged discipline do not rise to the level of supervisory authority under the Act unless the exercise of that authority requires the consistent use of independent judgment. That's the plain language of the statute. The exercise of supervisory authority is not, excuse me, the exercise of authority is not supervisory if it is merely routine or clerical in nature but requires the consistent use of independent judgment. Isn't that what City 3-4 talks about is the consistent use of independent judgment? Correct. How do we not have that here? Well, in this case, what the sergeants testified to was they routinely go to the lieutenant to seek his advice, to seek his counseling, and to seek his approval. That's what Sergeant Bursaw testified to. He said that he does not issue oral reprimands or oral counseling sessions without the lieutenant's advice, counseling, and approval. But didn't he go on his own volition? There was nothing mandating that he go to the supervisor, was there? There's nothing written, there's no mandate in the police department that he has to go to a supervisor. But the facts in the record show that the exercise of that authority to issue oral counseling sessions and oral reprimands do not require the consistent use of independent judgment. In fact, what the evidence showed was the sergeants don't use independent judgment. They actually go to the lieutenant and they confer with the lieutenant on these methods. The point, though, is that they have the authority to exercise independent judgment, and discipline begins with them, correct? Correct. Is that correct? That's correct. In any paramilitary organization or military organization, there's always, not always, but most of the time, there's always somebody who's going to be reviewing actions that are taken by a lower level supervisor, correct? I would agree with that. The fact that none of these, I don't recall reading about any of them, if any, of these disciplines, any type of disciplines are ever overwritten by a lieutenant, do you think that's important and that that should be taken into consideration? I don't think that needs to be taken into consideration on the issue of authority to discipline. The substantial review by superiors comes into consideration when we're talking about the effectiveness of recommendations of discipline. For example, here, sergeants have the authority to recommend discipline, but those recommendations in the past have been rejected and they're subject to substantial review. In fact, the board lays out one example in its decision below where it talks about a recommendation of discipline that had been made by a sergeant regarding an incident of a sort of faulty search of an arrestee, and there the chief ordered actually the lieutenant to conduct a thorough independent investigation, go over six hours of videotape, and then write a three-page memo to the chief detailing his findings regarding that misconduct of the subordinate officer. But with respect to whether the chief or the deputy chief or the lieutenant has ever rejected discipline imposed by a sergeant, I don't think that's really relevant to the issue of whether authority to discipline exists with the consistent use of independent judgment. And even taking a step back, there's a question here that the board raised whether the discipline, quote-unquote discipline, is even discipline within the meaning of the act. In the Matt Village of Woodridge case, this court held that oral reprimands are not the types of discipline that Section 3R is talking about unless they're using a progressive disciplinary process. Let's talk about the city of Sandwich case where they talk about the conflict of interest between sergeants and parole officers that the act is trying to prevent. I mean, we can talk about discipline and whether it's oral or verbal or verbal or written, or we could talk about all the other 11 factors, but let's look at the conflict. Isn't there a conflict when you have sergeants in negotiations at the same time as patrol officers when these are people who are basically their superiors? Right. Actually, I don't think that the same conflict exists that existed in the city of Sandwich. What happened in Sandwich was the sergeants, the union was petitioning to include the sergeants in the same bargaining unit as the patrol officers. So now we have petition for employees, the sergeants on the one hand that have an interest to serve the employer, and then also they are in the same union, the same bargaining unit as those subordinate employees that they oversee. In this case, we don't have that same conflict of interest. Matt is not seeking to include the sergeants in the same bargaining unit as the subordinate employees. So that conflict of interest between the employer on the one hand and the subordinate patrol officers on the other hand is not really present in this case like it was in Sandwich. I'm confused. Tell me what type of bargaining unit we're going to be in separately. A bargaining unit of sergeants. There's a separate bargaining unit of patrol officers. So the sergeants don't really have that conflict of interest. Both may have, though, right? I'm not exactly sure. I'm not sure whether the same union will represent both bargaining units. But that was the big conflict of interest in the city of Sandwich. The big conflict of interest was, hey, these petition for employees are in the same collective bargaining unit as the people that they oversee. It's not a factual issue in our case. It's whether or not the sergeants under the evidence meet the definition of supervisors per statute. Isn't that true? Right. And then we know that the standard of review is clearly erroneous. Right. The standard of review is clearly erroneous. And there's substantial deference that's given to the board, and the board is the fact finder. It's just a fact that the standard of review is against the manifest way of the evidence. When you use the phrase progressive disciplinary action under the Woodridge case, what do you mean? That the sergeant makes the decision, and by progression it goes up to a lieutenant and not up to the chief, let's say? Right, I'll explain that. What I think Woodridge meant by progressive disciplinary system was once a petition for employee issues an oral reprimand against a subordinate, that oral reprimand is used in future instances of misconduct to give something higher than an oral reprimand. For example, the next time there's an issue of misconduct, perhaps a superior officer will look in the file and say he deserves a written reprimand or he deserves a two-day suspension because he's already had an oral reprimand or he's already had a written reprimand. Now, what the board is skeptical of in this case, and I think reasonably so, is that there is a lack of any evidence that the oral reprimands have ever been used in a progressive disciplinary system. And the board makes clear this isn't a question of the number of times that oral reprimands are used in progressive discipline. It's not a question of number of times, but the board requires some level of assurance that the oral reprimands do actually serve in a progressive disciplinary process. Let me ask you a question. Two questions. First of all, isn't it true that the city of Freeport case, that the evaluation process in the Freeport case is almost identical to the evaluation process used in Oak Brook? No, I would say no. How is it different? The difference here is the petition for employees evaluated their subordinates with consistent use of independent judgment in the city of Freeport. In this case, we maintain that the use of independent judgment is not evident. This is a give and take process between the sergeants and the lieutenant working together on a consensus basis to evaluate the subordinates. Now, the village tries as hard as it can to disassociate the lieutenant from this process, but that's not what the evidence bears out. This is how the evaluations work. The sergeants take the first crack at the evaluations. There are various categories of police work that they evaluate the subordinates on, and they give written comments, and then ultimately they give a numerical score that's associated with the level of pay increase that the subordinate officers could receive. They turn those evaluations into the lieutenant, and the lieutenant makes substantive comments on the evaluations. It's not just merely typos. He'll alert the sergeants as to whether they have forgotten to include an instance of discipline in the evaluations. And isn't it true that what the testimony was that he never directed any sergeant to change the numerical score, correct? Correct. And also when the sergeants gave a score that he thought was perhaps higher, that they need to justify it by putting more comments. Isn't that just good supervision of another supervisor? I think it's good supervision of a subordinate that was not a supervisor. Even though Lieutenant Cates did not order the subordinates to change the score, there is testimony that at least on three occasions in the record, the sergeants did change the score based on the comments received from the lieutenant. I must advise your time is up, so if you want to make one final point. No, it's not up yet. Oh, I'm sorry. I thought he indicated your time is up. We do contend that with respect to the evaluations, there is not consistent use of independent judgment. And the board has long held that where decisions are made on a consensus basis, the board cannot conclude that any particular sergeant uses independent judgment. In fact, it's court-dependent judgment. The lieutenant is an integral part of these evaluations, and that's what's different than the city of Freeport. With respect to the sergeants' authority to effectively recommend rewards and promotions, with respect to rewards, there's no evidence in the record to indicate what impact letters of commendations have on the chief's promotional decisions. What about recommendations of watch commanders? Well, with respect to the watch commanders, for example, the assistant shift commanders, since 2005, the sergeants haven't made any recommendations with respect to assistant shift commanders. And, moreover, the assistant shift commander recommendations have been rejected in the past. And on top of that, the evidence shows that at the sergeants' monthly meetings, they collectively, again by consensus, make their recommendations for assistant shift commanders to the chief of police. And, again, what the board has a problem here with is the lack of evidence that the sergeants use independent judgment, that each sergeant uses independent judgment in recommending a patrol officer for assistant shift commander. Because these sergeants do it together. And consensus, decisions made on the basis of consensus, do not evince that required use of independent judgment. With respect to promotions, recommendations of promotions for specialty assignments, and I may have misspoke. I apologize. It's with respect to specialty assignments that the sergeants have made no recommendations since 2005. And, in fact, the testimony there was that the lieutenant case's testimony was that he cannot recall a single instance where the chief has deferred to the sergeants with respect to the specialty assignments since 2005. Finally, I'd just like to mention… So there aren't they made by the chief on recommendation by the sergeants? Not the specialty assignments. The testimony was that, yes, lieutenant case testified that the sergeants recommend officers for specialty assignments. But what came out of cross-examination was that since 2005, they never recommended anybody for specialty assignments. And then lieutenant case couldn't even identify one instance where the chief relied on a recommendation for a specialty assignment. Finally, I'll just touch on the issue of authority to adjust grievances. There is no evidence in the record, again, to show that the sergeants possess real authority to adjust grievances. In the Village of Woodridge case, this court held that the mere designation as the – excuse me. The mere designation as the personnel to adjust grievances at the first step of collective bargaining is not sufficient evidence of authority to adjust grievances under the act. And lieutenant case here admitted that the sergeants routinely send up grievances up the chain of command because they're not even authorized to adjust most grievances. You don't discuss in your brief the general order that – general order 9620. Talk about that, about the fact that the general orders and the job description for sergeants are that they are first-line supervisors. Right. And I think that all that the general order says is that they are the first-line supervisors for adjusting grievances. But that's just words on a piece of paper. The board is skeptical of simply taking job descriptions at their face value, especially when it's contradicted by the testimony at the administrative hearing. Lieutenant Cates testified that, yeah, they may be nominally listed as first-line supervisors for adjusting grievances, but the testimony bore out that they routinely send those grievances up. And that's exactly what happened in the Village of Woodridge case. But they recommend discipline based upon infractions of the policy, and all discipline begins with them, correct? That's correct. I see that I'm running out of time, but if I could just say two more sentences on that issue. The question there is whether the sergeants effectively recommend discipline. And we maintain that they do not effectively recommend discipline because the recommendations are rejected in the past, and they also are subject to intense independent review by superiors. Thank you very much. Thank you. I was going to say, driving out here, I was wondering how I was going to fill up 15 minutes and probably sit here and talk to you about this all morning long. So I'll make it brief, but I do want to explain the union situation. The patrol officers are represented by the criminal order of police. The sergeants are trying to organize through the Metropolitan Alliance of Police. So in that limited sense, the Sandwich decision is different than this decision because they were trying to organize them in the same union, and nobody wants to have supervisors and patrol officers in the same union. However, the analysis in the Sandwich case is directly appropriate here because the question isn't whether sergeants and patrol officers should be in the same union. What your colleagues looked at is whether the sergeants were supervisors and determined because they imposed discipline, they are supervisors under Section 3R of the Act. The same section would apply to patrol officers or sergeants. Yes. Yes. And the test here, you know, again, I hate to go back to Sergeant Birdsaw about, you know, Birdsaw went to Cates. What's Cates supposed to do? Hey, I'm not going to talk to you. You've got to go exercise some independent judgment. This guy's seeking counseling. You know, he needs help making decisions. That's one of the things that the lieutenant is there for is to help these, you know, is to talk this through. Again, I think it's critical for you to remember because it's such a big issue for the state that Birdsaw was never told what to do. Birdsaw was never told to go to Cates. He went there. Jacobs, now there's six sergeants. There's only two guys that testified and made discipline. Jacobs testified 20 instances. Nobody ever came back to me. And, you know, when you talk about the independent review, you know, they keep going back to this one incident. You know, it's you need to look at all the other cases because of the case that we've talked about because there's instances, for instance, I don't know if it was in Hazelcrest or in the Woodridge case where the chief didn't always follow him. He followed him. And there were two or three times out of 20 instances where he didn't. Here it was universal except for one instance. And the analysis here isn't whether the chief or the sergeant superiors followed him universally. It's whether their decision-making is done without substantial review. And I would submit to you, and we've discussed this in the brief, in the universe of all of the performance evaluations, which directly affect the salaries that the guys that are not top of grade get, the officers that are not top of grade get, there were only three instances where they could testify to where the sergeant lieutenant said you need to go back and beef this up to justify the score. And they testified that he didn't tell them to go back and lower the score. They lowered the score. And you know why they lowered the score? They lowered the score because they were too lazy or too indifferent to go back and beef up the evaluation to justify the score. And your counsel made a good point. Why does he look at these evaluations? He looks at the evaluations because the sergeants may have missed, among other things, the sergeants may have missed discipline or commendations that should have gone on the report. And he's telling them this stuff. To some extent there may have been a collaborative effort, but you've got to remember that all the police officers, and again this came out in the testimony, there's two sergeants on every shift. So they're not there, you know, they're both not there all the time. So one guy may know something about the guy that the other guy doesn't. That's a collaborative effort. I wouldn't expect anything less from a well-run department. The other thing is about this progressive discipline. Well, like it goes in the file, but it's never, it's like nothing ever comes of it. Well, as I talked about before, and as you all know, there are departments that are high discipline and departments that are low discipline. So in this situation, you know, this is a low discipline department. So it's in the file. That's uncontested. In closing, I would like to quote something from the city sandwich case talking about the board's decision in saying that they're supervisors, talking about being in the same unit, but they're supervisors. The court said, Justice McLaren, yes. The board's decision is clearly erroneous, and this is the forest for the trees. By mechanically applying section 300 of the act, the board failed to consider the policy underlying the act, and it's the application to the city's police force as the force was designed and actually functions. We conclude that the city's police sergeants do supervise the city's patrol officers, and that including the sergeants in the same bargaining unit apply that in this section. So the court's talking about they are supervisors for all the reasons that are in here. I respectfully submit and ask that you, as the forest for the trees, like the labor board did, that the labor board's decision is reversed, and that you hold that they are supervisors, and that you continue in your section 3A of the act. Thank you. The case is taken under advisement. The clerk stands agreed.